WESTERN PRESBYTERIAN CHURCH,
Rev. John W. Wimberly, Jr., and Susan
Stirling Farr, Plaintiffs,

v.

The BOARD OF ZONING ADJUSTMENT
OF the DISTRICT OF COLUMBIA,
et al., Defendants.

Civ. A. No. 94–0749.

United States District Court,
District of Columbia.

Sept. 8, 1994.

Michael Gerard McGovern, Stephen M. Feldhaus, Fulbright & Jaworski, L.L.P, Washington, DC, for Western Presbyterian Church, Rev. John W. Wimberly, Jr., and Susan Stirling Farr.

William Johnson Earl, Jr., Michael Francis Wasserman, Office of Corp. Counsel, Washington, DC, for The Board of Zoning Adjustment of the District of Columbia and DC Dept. of Consumer and Regulatory Affairs.

Patricia Lee O'Beirne, Howrey & Simon, Washington, DC, for Interfaith Conference of Metropolitan Washington, Council of Churches of Greater Washington, Archdiocese of Washington, and Washington Legal Clinic for the Homeless.

Donn Charles Meindertsma, Winston & Strawn, Washington, DC, for American Jewish Congress, National Capital Region amicus curiae.

## MEMORANDUM OPINION
## AND ORDER

SPORKIN, District Judge.

On April 6, 1994, the plaintiffs brought this action against defendants the Board of Zoning Adjustment of the District of Columbia ("BZA") and the Department of Consumer and Regulatory Affairs of the District of Columbia seeking, *inter alia,* to enjoin enforcement of 1) a September 3, 1993 decision of the District of Columbia Zoning Administrator ("zoning administrator"); 2) the March 2, 1993 decision of the BZA upholding the zoning administrator's September 3, 1993 decision; and 3) the District of Columbia zoning regulations, as applied by the defendants to the Western Presbyterian Church's program to feed homeless persons on its premises. On April 15, 1994, the Court granted a preliminary injunction, having found that the plaintiffs demonstrated a substantial likelihood of success on the merits of their constitutional and statutory claims. *See Western Presbyterian Church v. Board of Zoning Adjustment,* 849 F.Supp. 77 (D.D.C.1994). Presently before the Court for decision are the plaintiffs' motion for summary judgment and the defendants' motion to dismiss or in the alternative for summary judgment. On July 7, 1994, the Court held a hearing on the motions at which it heard extensive oral argument.

## I.

## FACTUAL BACKGROUND

The Western Presbyterian Church (the "Church") is organized as a particular congregation of the Presbyterian Church (USA). In 1984, the Church began operating a program to feed homeless persons at its former location at 1906 H Street, N.W., in Washington, D.C. The Church launched the program—in conjunction with the non-profit corporation Miriam's Kitchen, Inc. ("Miriam's Kitchen")—in response to the dramatic upsurge in homelessness experienced by this city in the early 1980s and the inability of federal and state authorities to deal with the problem. In its original structure, the feeding program provided bag lunches to homeless persons; the Church later expanded its services to include serving of breakfasts in the Church basement.

The chain of events that underlie this lawsuit started in 1989, when the Church entered into an agreement with the International Monetary Fund ("IMF") to exchange its 1906 H Street property for an IMF-owned lot located at 2401 Virginia Avenue, N.W. ("the Virginia Avenue site"). The IMF promised, in the agreement, to build a new church building at the Virginia Avenue site that would incorporate a feeding center. The Church continued its operations at the old location, which it leased from the IMF, while awaiting completion of the new church. Plans for the new church at the Virginia Avenue site were drawn up, and in December 1990, the Church filed an application with the Zoning Commission of the District of Columbia ("Zoning Commission") for a building permit. The Church indicated in its application to the Zoning Commission that the new building would be used as a church, but made no specific reference to the operation of a feeding program at the site. The zoning administrator issued the building permit, and construction began on the new church in June of 1992.

*Decision of the Zoning Administrator.*

In August 1993, the local Advisory Neighborhood Commission (ANC–2A) and the Foggy Bottom Association complained to the zoning administrator, expressing concerns about the Church's plans to provide food for the needy at the new church building. In a September 3, 1993 letter to the pastor of the Church, the zoning administrator notified the Church that its feeding program was not a use permitted as a matter of right in a residential zone, and was a prohibited use in the special purpose zone.[1] He advised that the regulations required the Church to obtain a special exception if it wanted to conduct the program in the residential portion of its lot and a "variance" if it wanted to·oper-

---

1. The Church's Virginia Avenue site is located in a "split zone"—part of the lot is located in an R–5–D zone (high density, general residential) and part is in an SP–2 zone (special purpose). The Church feeds the homeless out of the portion of its building located in the SP–2 zone.

ate the program in the "special purpose" section of the Church.

The zoning administrator based his decision in part on section 216 of the zoning regulations. Section 216 regulates programs conducted by church congregations or groups of churches in residential zones and provides:

A program conducted by a church congregation or group of churches shall be permitted in an R–1 district in accordance with the conditions specified in § 3108 of chapter 31 of this title, subject to the provisions of this section.

a. The church program shall not be organized for profit, but shall be organized exclusively for the promotion of the social welfare of the community.

b. The part of the church program conducted on the property shall be carried on within the existing church building(s) or structure(s).

c. The staff conducting the program shall be composed of persons, at least seventy-five percent (75%) of whom volunteer their time and services.

d. The operation of the program shall be such that it is not likely to become objectionable in the Residence district because of noise and traffic.

e. No signs or display indicating the location of the church program shall be located on the outside of the building or the grounds.

f. Any authorization by the Board shall be limited to a period of three (3) years, but may be renewed at the discretion of the Board.

11 D.C.M.R. § 216.

■ Use of a building as a church is a matter of right in both special purpose and residential zones. 11 D.C.M.R. § 501.1(a) and 201.1(b). The zoning regulations provide that "[a]ny other accessory use ... customarily incidental to the uses otherwise authorized by this chapter shall be permitted in an SP district." 11 D.C.M.R. § 502.7. Thus, a necessary element of the zoning administrator's decision was the determination that the Church's feeding program was not an "accessory use" incidental to the use of a church building in a special purpose zone.

■ The zoning administrator noted that section 216 makes available special exceptions for particular church programs in residential neighborhoods. Consequently, if the Church intended to feed the homeless in the part of its building located in the R–5–D zone, it would be required to obtain such a special exception. He observed, however, that section 216 is silent with respect to church programs in the less restrictive special purpose zones. He interpreted that silence as evidence that the zoning laws did not contemplate special exceptions for church programs in special purpose zones. On that basis, the zoning administrator concluded that church programs in special purpose zones are prohibited uses, requiring a variance before they may be conducted.[2]

*Decision of the Board of Zoning Adjustment.*

On October 15, 1993, the Church appealed the Zoning Administrator's decision to the

---

2. A variance is a form of administrative relief granted in response to specific requests for changes in the zoning plan. Use variances—changes in permitted use—may be granted by the BZA under section 3107. Variances are granted where "the strict application of any regulation adopted under D.C.Code §§ 5–413 to 5–432 (1981) would result in **peculiar and exceptional practical difficulties to or exceptional and undue hardship** on the owner of the property ... [p]rovided, that the relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the Zoning Regulations and Map." 11 D.C.M.R. § 3107.2 (emphasis added).

Special exceptions are another form of administrative relief that may be granted by the BZA. Special exceptions are granted only in situations specified by the zoning laws and only to the extent the BZA can make the necessary factual findings set forth in the zoning laws. Section 3108.1 authorizes the BZA to grant special exceptions where, "in the judgement of the Board, those special exceptions will be **in harmony with the general purpose and intent of the Zoning Regulation and Maps and will not tend to affect adversely the use of neighboring property** in accordance with the Zoning Regulations and Zoning Maps, subject in each case to the special conditions specified in this title ..." 11 D.C.M.R. § 3108.1 (emphasis added).

BZA requesting a determination on 1) the question of whether its feeding program is a matter of right "accessory use", thus obviating the need for a variance and 2) whether the requirement of a variance to provide food to needy persons violated its statutory and constitutional rights. The BZA held two public hearings on the matter at which it considered the "accessory use" issue. On March 2, 1994, the BZA voted to uphold the zoning administrator's decision.

In upholding the decision below, the BZA fully adopted the reasoning of the zoning administrator, basing its decision on an interpretation of section 216. The BZA held, in essence, that special exception relief is available only for church programs in residential neighborhoods, therefore, church programs located in special purpose zones are prohibited uses and can be made permissible only by obtaining a "variance." It found that the zoning administrator's decision had implicitly determined that the Church's proposed feeding program was not an "accessory use" that would permit the operation of the program. The BZA analogized the Church's feeding program to "Meals–on–Wheels" which the BZA previously had found not to be an "accessory use" to a church. The BZA, conceding it did not have jurisdiction over the Church's constitutional and federal statutory claims, limited its decision to the specific regulations it administers.

■ The effect of the BZA's decision was to prohibit the Church from resuming its feeding program at its new Virginia Avenue location. The plaintiffs promptly took steps to appeal the BZA's decision to the District of Columbia Court of Appeals. In order to be appealable, however, the BZA's decisions or orders must "be in writing and [must] be accompanied by findings of fact and conclusions of law, which shall be filed in the record." 11 D.C.M.R. § 3331.3. Such decisions or orders become final only upon a filing of the completed record with notice to the parties. 11 D.C.M.R. § 3331.6. The Church's planned move to the Virginia Avenue site was scheduled for April 30, 1994, so time was of the essence. As the moving date approached and the BZA's promised written decision had not been completed, the plaintiffs brought this injunctive action under the rights they claim are afforded them by the First Amendment to the Constitution and the Religious Freedom Restoration Act of 1993, Pub.L. No. 103–141, 107 Stat. 1488 (1993) ("RFRA").

## II.

## DISCUSSION

■ This is a conflict between a municipality's exercise of its power to regulate the use of real property within its jurisdiction and its citizens' constitutional rights to free exercise of their religion or beliefs. Zoning laws are designed to protect the community from the offensive use of real property.

> Zoning is a separation of the municipality into districts, and the regulation of buildings and structures in the districts so created, in accordance with their construction and the nature and extent of their use ...
> It is the dedication of the districts delimited to particular uses designed to subserve the general welfare.

*Mansfield & Swett, Inc. v. Town of West Orange,* 120 N.J.L. 145, 198 A. 225 (1938).

Although their goals may be laudatory, zoning ordinances may not infringe upon constitutionally protected rights. The constitutionality of the District of Columbia's zoning regulations are not challenged in this action. Nor do the plaintiffs contend that the city's zoning regulations are an invalid exercise of its police power or that any regulation violates the takings clause of the Fifth Amendment. The issue before the Court is whether the District of Columbia's zoning regulations, as interpreted by the city's zoning officials, preclude the Church from feeding the city's homeless which the Church contends is a valid exercise of its First Amendment rights and rights guaranteed to the Church under the RFRA.

*Abstention.*

■ As a preliminary matter, the defendants claim the matter should be returned to the District of Columbia under the abstention doctrines enunciated by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Railroad*

*Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In essence, the doctrines hold that a federal court should refrain from hearing constitutional challenges to state acts where the federal relief requested would impermissibly intrude on the right of a state to enforce its laws in its own courts unless the state action is deemed to be in "bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 54, 91 S.Ct. at 755.

■ Abstention is an important concept and should be applied where appropriate; however, it has no office where its application would deny persons valuable rights protected by the Constitution and laws of the United States. In this case, the plaintiffs claim they have a constitutional and statutorily protected right to feed the homeless of the District of Columbia. The actions of the District of Columbia's administrative body has denied the plaintiffs this right. What makes the District of Columbia's action particularly troubling is that in denying the plaintiffs the right to feed the city's homeless, it has done so without ever considering the plaintiffs' constitutionally and legislatively protected rights. The zoning administrator and the BZA have stated they have no jurisdiction to consider the plaintiffs' federally protected rights.

■ Because the BZA's decisions are directly appealable to the District of Columbia Court of Appeals, there could be a considerable lapse of time before the plaintiffs' federal claims would be adjudicated. Since the plaintiffs lack the ability to stay the defendants' action, they would be deprived of their federally protected rights during the period the defendants' decision is being reviewed.

Plaintiffs are asserting substantial rights, and if they are correct, they are entitled not to be deprived of their enjoyment of such rights for any significant period of time. In addition, they are entitled to have those rights adjudicated by a body of competent jurisdiction at the earliest possible time. Certainly, if the city's zoning administrative authorities had jurisdiction to hear federal constitutional and legislative claims, the doctrine of abstention would need to be carefully

considered. But as the record now stands, with the city's regulatory bodies simply ignoring these important rights, it is incumbent upon a federal court to accept jurisdiction and consider the very important questions presented.

*Standard for Summary Judgment.*

Summary judgment is appropriate where no material facts are in dispute and based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To decide a summary judgment motion, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

The moving party bears the burden of identifying those parts of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the opposing party to go beyond the pleadings to offer evidence of specific facts which create a genuine issue for trial. *Id.* The evidence produced must entitle the opposing party, assuming his version of events to be true, to judgment as a matter of law. *General Communications Eng'g, Inc. v. Motorola Communications and Elecs., Inc.*, 421 F.Supp. 274, 279 (N.D.Cal.1976) (quoting *McGuire v. Columbia Broadcasting Sys.*, 399 F.2d 902, 905 (9th Cir.1968). If the opposing party fails to make the requisite showing, the moving party is entitled to summary judgment. A fact is not material for the purposes of deciding a summary judgment motion if it is not necessary to the decision. *See Johns Hopkins Univ. v. Hutton*, 297 F.Supp. 1165, 1198 (D.C.Md.1968), *rev'd in part on other grounds*, 422 F.2d 1124 (4th Cir.1970). There are no material facts in dispute and this case is appropriate for summary judgment.

*Religious Conduct.*

■ The plaintiffs maintain that ministering to the needy is a religious function rooted in the Bible, the constitution of the Presbyterian Church (USA), and the Church's bylaws. Passages from the Church's bylaws and the Bible lend support to their position. For example, the bylaws define the Church's purpose as:

> [p]rimarily but not limited to, promoting a spirit of Christian influence within the fellowship of the congregation and upon the community; to provide religious education by communicating the unchanging Gospel through teaching, preaching and ministering to all who are in need; to gather to worship God and share sacraments and teachings of our religious faith; to provide a Christian fellowship among our members and to the community at large; and to assist in charitable work of any nature deemed beneficial.

Western Presbyterian Church Bylaws, Art. I. The plaintiffs also point to passages in the Bible that support the view that the Church's ministry is not merely a matter of personal choice but is a requirement for spiritual redemption.[3]

It must be noted that the concept of acts of charity as an essential part of religious worship is a central tenet of all major religions. For example, one of the five Pillars of Islam—the fundamental ritual requirements of worship, including ritual prayer—requires Muslims of sufficient means to give alms to the poor and other classes of recipients. Dictionary of Living Religions 347 (Keith Crim ed., 1981). Also, Hindus belonging to the Brahmin, Ksatriya, and Vaisya castes are required to fulfill five daily obligations of worship, one of which is making offerings to guests, symbolized by giving food to a priest or giving food or aid to the poor. *Id.* at 316. The concept finds its place in Judaism in the form of tendering to the poor clothing for the naked, food for the hungry, and benevolence to the needy. *Id.* at 387–88.

The plaintiffs have made a more than adequate showing that their feeding program at the Virginia Avenue location is motivated by sincere religious belief. Indeed, the defendants have not challenged the plaintiffs on this point. Accordingly, the Court finds the Church's feeding program to be religious conduct falling within the protections of the First Amendment and the RFRA.

■ The First Amendment prohibits laws that "substantially burden" the free exercise of religion. A "compelling interest" must exist before a state can impose a substantial burden on religious activities. In *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the Supreme Court held that the government had no compelling interest in denying the appellant unemployment benefits for refusing to work on her Sabbath day. It emphasized the strict limits imposed by the constitution on governmental regulation of religious conduct, stating that "no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation.'" *Id.* at 406, 83 S.Ct. at 1795 (citing *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945) *reh'g denied,* 323 U.S. 819, 65 S.Ct.

---

**3.** "For I was an hungred [sic], and ye gave me meat; I was thirsty, and ye gave me drink; I was a stranger, and ye took me in … Verily I say unto you, Inasmuch as ye have done *it* unto one of the least of these my brethren, ye have done *it* unto me.

Then shall he say also unto them on the left hand, Depart from me, ye cursed, into everlasting fire, prepared for the devil and his angels: For I was an hungred, and ye gave me no meat; I was thirsty and ye gave me no drink; I was stranger, and ye took me not in … And these shall go away into everlasting punishment; but the righteous into life eternal." Matthew 25:35, 40–43, 46 (emphasis in original).

"If a person is righteous and does what is lawful and right … and gives his bread to the hungry and covers the naked with a garment … he is righteous, he shall surely live, says the Lord God." Ezekiel 18:5–9.

"What does it profit, my brethren, if a man says he has faith, but has not works? Can his faith save him? If a brother or sister is ill-clad and in lack of daily food, and one of you says to them, 'Go in peace, be warmed and filled,' without giving them the things needed for the body, what does it profit? So faith by itself, if it has no works, is dead"). James 2:14–17.

557, 89 L.Ed. 650 (1945)). The Court found the governmental interest advanced by the state—protecting the viability of the unemployment benefits system by discouraging claims similar to the appellant's—unpersuasive, suggesting merely a possibility of damage to the unemployment benefits system. *Id.* at 407, 83 S.Ct. at 1795. The Court further reasoned that even if the threat to the benefits system existed, it was incumbent upon the state to "demonstrate that no alternative forms of regulation would combat such abuses without infringing First Amendment rights." *Id.*

The rule in *Sherbert* was applied in *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), to exempt the Old Order Amish sect from a state high school compulsory attendance law on the grounds that the state's interest in the education of children could not outweigh the right to act in accordance with religious beliefs. The Court recognized that the Amish lifestyle stemmed from deeply held religious beliefs and so held that "only those interests of the highest order and not those otherwise served can overbalance legitimate claims to the free exercise of religion." *Id.* at 215, 92 S.Ct. at 1533.

 The Supreme Court's decision in *Employment Div., Dep't of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), cut back to a certain level the scope of the compelling interest test. In *Smith,* the Court held that the compelling interest test applied only where the challenged regulation directly discriminated against religious conduct. The compelling interest test had been previously applied to facially neutral laws in addition to those explicitly directed at religious conduct. In response to *Smith,* the Congress enacted the RFRA to restore the law regarding religious freedom to its state prior to the Supreme Court's decision in *Smith.* Section 3 of the RFRA essentially codifies the *Sherbert* and *Yoder* compelling interest test, providing:

(a) IN GENERAL—Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) EXCEPTION—Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1.

 If a law or governmental action is found to substantially burden the free exercise of religion, the government must demonstrate that it has a compelling governmental interest in such a burden *and* that the interest could not be protected by a less restrictive means. The District of Columbia concedes that "it has no compelling governmental interest in prohibiting Western Presbyterian from conducting its feeding program at 2401 Virginia Avenue, N.W., so long as appropriate controls are in place."[4] Instead, the defendants take the position that the Court should dismiss the complaint because the zoning regulations do not substantially burden the plaintiffs' free exercise of their religion. Accordingly, the issue left for the Court to decide is whether the District of Columbia zoning regulations, as interpreted by the zoning administrator and the BZA and applied to the Church's program to feed the homeless at the Virginia Avenue site, substantially burden the plaintiffs' free exercise of religion in violation of the First Amendment and the RFRA.

*Substantial Burden.*

 At no point have the defendants challenged the plaintiffs' right to locate the Church at 2401 Virginia Avenue. What the defendants do challenge is the right of the Church to conduct one of its important religious programs, namely, feeding the poor. This Court has already concluded that the

---

4. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or for Summary Judgment at 17 n. 2.

Church's program to feed the needy is an important religious function. Having so concluded, the First Amendment and the RFRA compel the Court to overturn the city's action which has precluded the plaintiffs from exercising their important religious rights. Once the zoning authorities of a city permit the construction of a church in a particular locality, the city must refrain, absent extraordinary circumstances, from in any way regulating what religious functions the church may conduct. Zoning boards have no role to play in telling a religious organization how it may practice its religion. A city cannot use its zoning laws to regulate the way a particular religion offers its prayers or the way a religion celebrates its holidays.

Many religious organizations serve food as a part of their religious functions. Some churches conduct wedding ceremonies where, after the formal exchange of vows, those in attendance celebrate the marriage with food and beverages. As part of the Jewish ritual, after celebrating the Sabbath, food and drink are provided to the worshipers. Defendants at no time challenge the right of religious organizations to conduct such activities; indeed, the defendants concede the propriety of such activities. What the plaintiffs have engaged in is not much different. Unquestionably, the Church's feeding program in every respect is religious activity and a form of worship. It also happens to provide, at no cost to the city, a sorely needed social service. The secular benefits inure to the needy persons who partake of the free breakfasts; the members of the Church benefit spiritually by providing the service.

It is clear that the adverse decisions of the zoning administrator and the BZA were in response to complaints brought by neighborhood organizations. The reasons given by those groups were that the homeless attracted to the neighborhood by the feeding program would contribute to crime in the neighborhood. It is contended that this would result in a decline in property values.

The Court is not insensitive to the community's concerns. This is an outstanding neighborhood, only a short distance from the Kennedy Center and the upscale Watergate housing complex. The citizens who reside in this area are proud of their neighborhood and are entitled to be secure in their homes and workplaces. They are entitled to walk the streets without being harassed by panhandlers or assaulted in any way.

The Church recognizes its responsibility to the community and has represented that it will take all reasonable steps to assure the program will not result in harm to its congregation and neighbors. Indeed, the preliminary injunction issued by this Court on April 15, 1994, specifically provides:

> To the extent the feeding program does not constitute a nuisance, the plaintiffs should be allowed to resume this exemplary service at the Church's new location which is only a few blocks from where it has conducted its very worthwhile program for over 10 years without incident.

*Western Presbyterian Church v. Board of Zoning Adjustment*, 849 F.Supp. 77, 79 (D.D.C.1994). That provision will also be included in the permanent injunction the Court will issue. If circumstances change and the feeding program becomes a nuisance, upon a proper showing this Court will appropriately modify its final order.

As it did in its prior decision, the Court takes judicial notice that within three blocks of the Church's premises is a popularly priced restaurant. The Court knows of no attempt by the zoning authorities to dictate which persons may or may not be served at that facility. It seems rather incongruous that no objection could be raised if a needy person can buy his or her food, but it becomes inappropriate if that needy individual can obtain food at no cost from a benevolent source. The Court wonders what position authorities would take if instead of providing the meal on its premises, the Church provided the needy with funds and sent them to the nearby restaurant to be fed.

It is difficult to imagine a more worthwhile program. The federal government and the District of Columbia have been unable to deal with the problem of the homeless, but here, a private religious congregation is spending its own funds to help alleviate a serious societal problem. It is paradoxical

that local authorities would attempt to impede such a worthwhile effort.

## III.

### CONCLUSION

The plaintiffs here seek protection for a form of worship their religion mandates. It is a form of worship akin to prayer. If the zoning regulations cannot be applied to ban prayer in a church, they cannot be used to exclude this type of religious activity. The Church may use its building for prayer and other religious services as a matter of right and should be able, as a matter of right, to use the building to minister to the needy. To regulate religious conduct through zoning laws, as done in this case, is a substantial burden on the free exercise of religion. The plaintiffs have demonstrated that the defendants' actions substantially burden their right to free exercise of religion in violation of the First Amendment and the Religious Freedom Restoration Act of 1993. Accordingly, the plaintiffs are entitled to prevail on their motion for summary judgment. The defendants' motion will be denied. An appropriate order accompanies this opinion.

### ORDER

The Court has considered plaintiffs' motion for summary judgment and the defendants' motion to dismiss or in the alternative for summary judgment, the opposition thereto, the oral argument at the hearing on the motions, and the entire record in this case. On that basis, it finds that plaintiffs' operation of their program to feed the homeless at the Western Presbyterian Church located at 2401 Virginia Avenue, N.W. constitutes religious activity protected by the First Amendment of the constitution and the Religious Freedom Restoration Act of 1993 and that application of the District of Columbia's zoning regulations to the feeding program impermissibly infringes upon plaintiffs' right to free exercise of their religion. Accordingly, it is hereby

**ORDERED** that defendants' motion is denied. It is further

**ORDERED** that plaintiffs' motion is granted, and it is further

**ORDERED** that the District of Columbia, the Board of Zoning Adjustment of the District of Columbia, the Department of Consumer and Regulatory Affairs of the District of Columbia, their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are permanently enjoined from employing the District of Columbia zoning regulations, or any other District of Columbia municipal ordinance, to prevent plaintiffs from administering their program to feed the homeless on the Church premises or otherwise interfere in the operation of such feeding program so long as the feeding program is conducted in an orderly manner and does not constitute a nuisance. Defendants are granted leave to seek relief in this Court if the feeding program constitutes a nuisance or is otherwise conducted in a manner inconsistent with this order.