THE GREATER BIBLE WAY TEMPLE OF JACKSON v
CITY OF JACKSON

Docket Nos. 250863, 255966. Submitted April 12, 2005, at Lansing.
Decided November 10, 2005, at 9:00 a.m. Leave to appeal sought.

The Greater Bible Way Temple of Jackson brought an action in the
Jackson Circuit Court against the city of Jackson, the Jackson
Planning Commission, and the Jackson City Council, challenging the
defendants' refusal to rezone the plaintiff's property from single-
family residential to multiple-family residential to allow its use as the
site of proposed assisted living center apartments for the elderly and
disabled. The court, Chad C. Schmucker, J., ruled before trial that the
defendants' denial of the request for rezoning constituted an indi-
vidualized assessment within the meaning of the Religious Land Use
and Institutionalized Persons Act (RLUIPA), 42 USC 2000cc *et seq.*
The court, after a bench trial, concluded that the city had violated the
RLUIPA and entered an order enjoining the defendants from pre-
venting the plaintiff from building the originally proposed 32 units or
a lesser number, as long as they are consistent with the multiple-
family residential rezoning that the plaintiff sought. The court also
enjoined the defendants from implementing or imposing a land use
regulation in a manner that would impose a substantial burden on
the religious exercise of the plaintiff in its development and use of the
lots, absent compelling interests. The defendants filed two appeals,
which were later consolidated.

The Court of Appeals *held*:

1. The trial court did not err in ruling before trial that the
defendants' denial of the plaintiff's request for rezoning consti-
tuted an individualized assessment within the meaning of the
RLUIPA. The RLUIPA prohibits a government entity from impos-
ing on a person or a religious institution a land use regulation that
substantially burdens the free exercise of religion. The Jackson
zoning ordinances within the municipal code provide an extensive
procedure for a proposed zoning change. The defendants followed
those procedures. Therefore, the city's denial of the plaintiff's
request for a rezoning under the local zoning ordinances consti-
tuted an individualized assessment within the meaning of 42 USC

2000cc(a)(2)(C). *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315 (2003), is binding precedent and supports the trial court's decision.

2. The trial court did not err in concluding before trial that there was no factual dispute whether the defendants' zoning decision substantially burdened the plaintiff's exercise of its religious beliefs. The RLUIPA requires the plaintiff to show that the regulation compels action or inaction with respect to a sincerely held belief. Religious exercise is any exercise of religion, whether compelled by or central to a system of religious belief. 42 USC 2000cc-5(7)(A). The use of real property for religious exercise is considered religious exercise by the person or entity that uses it for that purpose. 42 USC 2000cc-5(7)(B). Testimony demonstrated that the provision of housing to the elderly and disabled is central to the plaintiff's ministry in Jackson and is a religious belief held by the plaintiff. In this case, the operation of an assisted living apartment complex for the elderly and disabled constitutes an exercise of religion and entails the use of real property for the purpose of religious exercise. No appropriately zoned property was available; the plaintiff had, at substantial cost, purchased property zoned for single-family residential use, but building single-family homes would not be economically feasible. The denial of the zoning change request imposed a substantial burden on the plaintiff.

3. The trial court did not err in concluding after trial that the defendants had not shown a compelling governmental interest for denying the plaintiff's request for rezoning and in determining that the denial was not the least restrictive means of furthering such an interest. Once the plaintiff established the imposition of a substantial burden on its religious exercise, it was the government's obligation to demonstrate that its burdening action was in the furtherance of a compelling governmental interest and was the least restrictive means of furthering that interest. 42 USC 2000cc(a)(1)(A), (B). The defendants' traffic concerns are not compelling because any congestion would be limited to two or three times a year. The defendants did not show that blight prevention or urban sprawl was a compelling government interest or that the denial of rezoning was the least restrictive means of furthering that interest. A compromised reduction in the size of the project would have been less restrictive.

4. The section of the RLUIPA at issue in this case is constitutional. Statutes are presumed to be constitutional, and every reasonable presumption must be made in favor of constitutionality. The United States Supreme Court has determined that Congress had the power to enact statutes to enforce the rights

guaranteed by the First Amendment under US Const, Am XIV, § 5. *Boerne v Flores*, 521 US 507 (1997). Legislation enforcing a constitutional right without substantively altering the right is assessed by evaluating whether the legislation is congruent and proportional to the injury to be prevented or remedied. In this case the RLUIPA is congruent and proportional to the injury to be prevented or remedied. Also, the RLUIPA does not violate the Establishment Clause, US Const, Am I, because it alleviates exceptional government-created burdens on private religious exercise and does not differentiate among bona fide faiths. *Cutter v Wilkinson*, ___ US ___; 125 S Ct 2113; 161 L Ed 1020 (2005).

5. The circuit court did not err in granting plaintiff an award of attorney fees in spite of plaintiff's failure to make a demand for them in its complaint. Attorney fees may be awarded to the prevailing party in RLUIPA cases, in the court's discretion. 42 USC 1988(b). MCR 2.601(A) allows every final judgment to grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his or her pleadings. The circuit court held a hearing on the issue, after briefing by the parties, and the matter was thoroughly considered. The defendant knew or should have known of the possibility of an award of attorney fees.

Affirmed.

1. ZONING — REZONING — RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT — INDIVIDUALIZED ASSESSMENTS.

A government entity may not impose on a person or a religious institution a land use regulation that substantially burdens the free exercise of religion; a denial of a rezoning request under the formal procedures laid out in a zoning ordinance constitutes an individual assessment of a proposed use of a property that may be challenged under the Religious Land Use and Institutionalized Persons Act as imposing a substantial burden on the free exercise of religion (42 USC 2000cc[a][2][C]).

2. COSTS — ATTORNEY FEES — RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT.

Attorney fees may be awarded to the prevailing party in a Religious Land Use and Institutionalized Persons Act case, in the court's discretion, even where a demand for attorney fees was not made in the complaint (42 USC 1988[b]; MCR 2.601[A]).

*Hubbard, Fox, Thomas, White & Bengtson, P.C.* (by *Michael G. Woodworth, Brian W. Surgener,* and *Mark W. Koerner*), for the plaintiff.

*Julius A. Giglio,* City Attorney, *Susan G. Murphy,* Acting Deputy City Attorney, and *John W. Stanowski,* Assistant City Attorney, for the defendants.

Amicus Curiae:

*Secrest, Wardle, Lynch, Hampton, Truex & Morley* (by *Gerald A. Fisher* and *John J. Martin, III*), for the Michigan Municipal League.

Before: FORT HOOD, P.J., and METER and SCHUETTE, JJ.

METER, J. In this case involving the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 USC 2000cc *et seq.,* defendants appeal as of right from a judgment for plaintiff entered after a bench trial. Defendants also appeal as of right from an order awarding plaintiff attorney fees and costs. We affirm in both cases.

Plaintiff purchased eight parcels of land for the purpose of constructing an assisted living center for elderly and disabled people, and it sought a rezoning of the parcels from "single-family residential" (R-1) to "multiple-family residential" (R-3). After the city of Jackson denied the rezoning request, plaintiff sued, alleging, in part, a violation of the RLUIPA. The court, after a bench trial, entered an order that enjoined defendants from preventing plaintiff "from building the originally proposed housing plan of 32 units, or any plan with a lesser burden, on said lots that comports with R-3 zoning as defined in the Jackson Coty [sic] code . . . ." The order also prohibited defendants from implementing or imposing a land use regulation in a manner that would impose a substantial burden on the religious exercise of plaintiff in its development and use of the lots, absent compelling interests.

On appeal, defendants first argue that the trial court erred in ruling before trial that defendants' denial of the request for rezoning constituted an individualized assessment within the meaning of the RLUIPA. The court made this ruling in connection with defendants' motion for summary disposition under MCR 2.116(C)(10). We review de novo a trial court's ruling with regard to a motion for summary disposition. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 324; 675 NW2d 271 (2003). "A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim." *Shepherd Montessori, supra* at 324. "[The] court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id.* "When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Id.*

As this Court recently explained in *Shepherd Montessori, supra* at 319, "[the] RLUIPA prohibits a governmental entity from imposing on a person, or on a religious institution or assembly, a land use regulation that substantially burdens the free exercise of religion." See 42 USC 2000cc(a)(1). A plaintiff must meet at least one of the following three jurisdictional tests in order to receive protection under the RLUIPA:

"(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign

nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) *the substantial burden is imposed in the implementation of a land use regulation, or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."* [*Shepherd Montessori, supra* at 327, quoting 42 USC 2000cc(a)(2) (emphasis added).]

At issue here is the third jurisdictional test. We conclude that the trial court did not err in concluding that defendants' denial of the request for rezoning constituted an individualized assessment within the meaning of the RLUIPA. Indeed, § 28-183 of the Jackson zoning ordinances within the municipal code provides an extensive procedure for a proposed zoning change; it includes such requirements as a written application, a hearing, and consideration by the city council. Moreover, it was clear that defendants followed the formal procedures of the zoning ordinance. Under the circumstances, the RLUIPA was applicable. See, e.g., *Shepherd Montessori, supra* at 328 (the township's evaluation and denial of the plaintiff's request for a use variance under the local zoning ordinance constituted an individualized assessment under 42 USC 2000cc [a][2][C]).

Defendants argue that the existence of an individualized assessment is a question of fact, not law, and that the trial court followed nonbinding legal authority in making its ruling. Defendants' arguments are not persuasive because (1) the trial court, in effect, concluded that there was no genuine factual dispute that defendants' conduct constituted an individualized assessment under the RLUIPA and (2) regardless of the law

on which the trial court relied, *Shepherd Montessori* is binding precedent and supports the trial court's decision. It is clear that the government in this case had "in place formal or informal procedures or practices that permit the government to make individualized assessments of the proposed uses for the property involved." 42 USC 2000cc(a)(2)(C). Moreover, the government followed those procedures here. Reversal is unwarranted.

Defendants next argue that the trial court erred in ruling before trial, in connection with their motion for summary disposition, that there was no genuine factual dispute that defendants' zoning decision substantially burdened plaintiff's exercise of its religious beliefs.

"Once the jurisdictional requirements of [the] RLUIPA have been satisfied, [the] plaintiff must establish a substantial burden on religious exercise" *Sheperd Montessori, supra* at 329 (quotation marks omitted). To show that a governmental regulation imposes a substantial burden on a plaintiff's exercise of religion under the RLUIPA, the plaintiff must show that the regulation "must compel action or inaction with respect to [a] sincerely held belief . . . ." *Id.* at 330. Inconvenience to the church falls short of a substantial burden. *Id.*

The RLUIPA defines "religious exercise" as including "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 USC 2000cc-5(7)(A). Additionally, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 USC 2000cc-5(7)(B). In determining whether plaintiff's operation of an assisted living apartment complex for the elderly and disabled

constitutes an exercise of religion, *The Jesus Ctr v Farmington Hills Zoning Bd of Appeals*, 215 Mich App 54; 544 NW2d 698 (1996), is instructive. In that case, The Jesus Center had been renting a two-story building in Farmington Hills since 1984 for traditional worship services, but also for a distribution point to supply food and clothing to needy persons. *Id.* at 55-56. In 1991, The Jesus Center sought to broaden its ministry by providing a shelter service to poor people and the homeless. *Id.* at 56. Farmington Hills denied the center's application for an "accessory use." *Id.* at 58. Arguing a violation of the Religious Freedom Restoration Act, 42 USC 2000bb *et seq.*, The Jesus Center contended that "operation of the shelter was part of its religious mission" and that "its provision of shelter services flows from its religious beliefs and is an exercise of those beliefs." *The Jesus Ctr, supra* at 58, 63-64. This Court agreed, reasoning that it is "not at liberty to question this position" and that "[i]t is not the job of the courts to second guess what activities are sufficiently religious to qualify for free exercise protection." *Id.* at 64 (citation and quotation marks omitted).

In the present case, Reverend Ira Combs, the pastor and founder of the Greater Bible Way Temple, averred in his affidavit that providing housing to the elderly and disabled "is central" to plaintiff's ministry in Jackson and that this mission is acknowledged in plaintiff's letterhead. He explained further in the affidavit that this mission is given to the church through the teachings of Jesus Christ "and is a religious belief held by the Greater Bible Way Temple." Thus, the operation of an assisted living apartment complex for the elderly and disabled constitutes an exercise of religion and entails the use and construction of real property for the pur-

pose of religious exercise. We conclude that the proposed project constitutes religious exercise within the meaning of the RLUIPA.

Plaintiff must additionally show that defendants' application of the zoning ordinance and refusal to rezone the area to R-3 constitutes the imposition of a substantial burden on plaintiff's religious exercise. See 42 USC 2000cc(a)(1). Because the use of land for the purpose of religious exercise is itself defined as religious exercise in 42 USC 2000cc-5(7)(B), defendants' denying plaintiff the use of the property as an apartment complex for elderly persons, as part of plaintiff's religious mission, constitutes the requisite substantial burden. See *Elsinore Christian Ctr v City of Lake Elsinore*, 291 F Supp 2d 1083, 1091 (CD Cal, 2003) (the municipality's denial of the church's request for a conditional use permit to operate a church on property is a substantial burden because the use of land for religious exercise is itself religious exercise under the RLUIPA).

As discussed above, providing housing and services to the community is not only part of plaintiff's mission as a church but is central to its religious faith. Combs's affidavit explains that plaintiff cannot afford to purchase different property and that it would lose an investment of over $150,000 if it cannot provide housing on the property in question. Moreover, because of services the church provides to the elderly, it is necessary for the apartment complex to be close to the church; thus, moving the project to another site would impose a substantial burden on plaintiff. The evidence additionally indicated that building single-family homes would not be economically feasible as an alternative for plaintiff.

Also, both Combs's affidavit and the affidavit of Doug Volkman, a realtor, indicated that there were no prop-

erties for sale near the church that are zoned R-3. In light of these facts, defendants' denial of the petition for rezoning would create an economic burden, unless property were available in an R-3 zone. Because no such property was available near the church in an R-3 zone, it would be a substantial burden for plaintiff to forgo developing the project. The government's implementation of the ordinance would, in effect, compel inaction with respect to plaintiff's sincerely held religious belief. *Shepherd Montessori, supra* at 330. Construing the RLUIPA in favor of a broad protection of religious exercise, as required by 42 USC 2000cc-3(g), the implementation of the ordinance constitutes a substantial burden on the religious exercise of plaintiff.[1] Although there were differing opinions concerning the value of the subject property and the amount invested in the property, there was no dispute that the value of the property and plaintiff's investment are substantial. Moreover, there was no dispute that available property zoned R-3 near the church does not exist. Accordingly, the trial court did not err in its ruling with respect to the substantial burden issue.

Defendants next argue that the trial court erred in concluding after trial that defendants had not shown a compelling governmental interest for denying plaintiff's request for rezoning and in determining that the denial was not the least restrictive means of furthering such an interest.

We review a trial court's findings of fact for clear error. MCR 2.613(C); *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004). "In the application of this principle, regard shall be given to the special

---

[1] We note that, in contrast to the situation in *Shepherd Montessori, supra* at 332-333, the parties here submitted documentary evidence on factors relevant to the substantial burden issue.

opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

Once a plaintiff has established the imposition of a substantial burden on its religious exercise, it is the government's obligation to demonstrate that its burdening action was "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 USC 2000cc(a)(1)(A), (B). Defendants identify three potential compelling governmental interests in the context of this case: safety through traffic regulation, blight prevention, and urban sprawl prevention (or, phrased another way, promoting single-family neighborhoods).

With regard to traffic concerns, the record, at best, shows that rezoning would increase traffic but that congestion would occur only on special occasions, two or three times a year. Under these circumstances, we conclude that defendants have failed to show that the traffic-control interest is compelling.

Nor does the record support a finding of impending blight. At best, blight is a theoretical possibility. Defendants' own witness, Charles Reisdorf, testified that there is no evidence that rezoning the property to R-3 will cause blight to the area. Another witness, Charles Aymond, was not sure that the project would cause blight. While witness Dennis Diffenderfer testified that, in his experience, apartment developments in single-family neighborhoods ultimately contribute to blight, he did not know what the effect of the proposed project would be on this particular neighborhood. Ira Combs, Jr., testified that none of plaintiff's other housing projects in Jackson or other cities has destabilized the neighborhoods. Combs also testified that church apartment projects have a history of good management and that the projects are of high quality.

In light of the testimony, defendants have not demonstrated that blight prevention is a compelling governmental interest here. Even if blight prevention *were* a compelling governmental interest here, denial of rezoning was not the least restrictive means of furthering that interest. A compromised reduction in the size of the assisted living complex (a reduction to which plaintiff agreed at one point) would also achieve the desired result.

The control of urban sprawl is closely related to blight prevention as a governmental interest. Indeed, defendants' argument does not clearly differentiate between the two. The record does not portray the control of urban sprawl as a compelling governmental interest in this case. While Reisdorf testified that an incompatible structure (i.e., the proposed project) in the neighborhood may result in property owners failing to invest further in their property, he could only note the possibility. Moreover, while Aymond testified that, when the use of a single-family area is changed, instability results, he was not certain that destabilization would occur in this particular situation. Diffenderfer did testify that, in his experience, single-family, owner-occupied homes become rental properties when apartment complexes are introduced in the neighborhood. No evidence was offered, however, to show that the particular neighborhood in question will experience the loss of single-family, owner-occupied homes if the neighborhood is rezoned to R-3 and an assisted living complex is built there. Further, and significantly, even if defendants *had* established a compelling governmental interest in controlling urban sprawl, a less restrictive means of furthering that interest was available, as described above. The trial court did not commit clear error in finding no compelling governmental interest present in this situation.

Defendants next argue that the section of the RLUIPA at issue in this case is unconstitutional. "This Court reviews constitutional questions de novo on appeal. Statutes are presumed to be constitutional, and every reasonable presumption must be made in favor of constitutionality. The party asserting the constitutional challenge has the burden of proof." *McDonald v Grand Traverse Co Election Comm*, 255 Mich App 674, 679-680; 662 NW2d 804 (2003) (quotation marks omitted).

Defendants contend that the RLUIPA provisions at issue here exceed Congress's power under § 5 of the Fourteenth Amendment of the United States Constitution[2] because they essentially create new constitutional rights. Defendants' argument does not withstand analysis. As the United States Court of Appeals for the Eleventh Circuit has remarked, "In determining whether RLUIPA is an appropriate exercise of Congress's § 5 power," a court "must first determine whether Congress has the authority to enact legislation to enforce the rights guaranteed by the First Amendment." *Midrash Sephardi, Inc v Town of Surfside*, 366 F3d 1214, 1237 (CA 11, 2004). The United States Supreme Court has determined that Congress has that power. *City of Boerne v Flores*, 521 US 507, 519; 117 S Ct 2157; 138 L Ed 2d 624 (1997). The *Midrash Sephardi* court explained that the second inquiry "is whether [the] RLUIPA 'enforces' a constitutional right without substantively altering that right." *Midrash Sephardi, supra* at 1237. This question is answered "by evaluating whether the legislation is congruent and proportional to the injury to be prevented or remedied." *Id.*; see also *Boerne, supra* at 520. "[I]f RLUIPA merely codifies

---

[2] Section 5 states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." US Const, Am XIV, § 5.

existing constitutional principles, it is an acceptable use of Congress's § 5 remedial tool." *Midrash Sephardi, supra* at 1237. The *Midrash Sephardi* court found that documentation of "widespread discrimination against religious institutions" supports the conclusion "that RLUIPA remedies and prevents discriminatory land use regulations." *Id.* at 1239. Accordingly, the court concluded that the RLUIPA is an appropriate use of Congress's authority under § 5 of the Fourteenth Amendment. *Id.* at 1239-1240. The reasoning of *Midrash Sephardi* is sound, and we therefore find no § 5 violation in this case. The RLUIPA is "congruent and proportional to the injury to be prevented or remedied." *Id.* at 1237.

Defendants also argue that the portion of the RLUIPA at issue here violates the Establishment Clause of the First Amendment of the United States Constitution[3] by forcing municipalities to endorse religion. Several federal circuit courts of appeal have held that various portions of the RLUIPA do *not* violate the Establishment Clause. See, e.g., *Midrash Sephardi, supra* at 1240-1242, *Madison v Riter*, 355 F3d 310, 313-320 (CA 4, 2003), *Charles v Verhagen*, 348 F3d 601, 610-611 (CA 7, 2003), and *Mayweathers v Newland*, 314 F3d 1062, 1068-1069 (CA 9, 2002).

Moreover, and significantly, the United States Supreme Court has issued an opinion regarding the constitutionality of the RLUIPA. In *Cutter v Wilkinson*, ___ US ___; 125 S Ct 2113; 161 L Ed 2d 1020 (2005), the Court ruled that § 3[4] of the RLUIPA does not violate the

---

[3] The Establishment Clause of the First Amendment states: "Congress shall make no law respecting an establishment of religion . . . ." US Const, Am I.

[4] The RLUIPA states, in part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or

Establishment Clause "because it alleviates exceptional government-created burdens on private religious exercise." *Id.* at ___; 125 S Ct at 2121. The Court further indicated that it had "no cause to believe that [the] RLUIPA would not be applied in an appropriately balanced way," and the Court emphasized that the RLUIPA "does not differentiate among bona fide faiths." *Id.* at ___; 125 S Ct at 2123.

While *Cutter* dealt with § 3 of the RLUIPA and not with the land-use portion of the RLUIPA at issue in this case, the holding of *Cutter* is nonetheless applicable. Indeed, in *United States v Maui Co,* 298 F Supp 2d 1010, 1014 (D Hawaii, 2003), the district court listed several cases that found no Establishment Clause violation with regard to § 3 of the RLUIPA. The court then stated:

> [T]here is little reason to find differently in the land use context. The Establishment Clause arguments are essentially the same. If [the] RLUIPA does not constitute an impermissible advancement of religion for institutionalized persons as against prisons, it would not seem to do so for non-institutionalized persons as against municipalities in land use decisions. The Court therefore rules consistently with Ninth Circuit precedent in a prison context and finds that [the] RLUIPA does not violate the Establishment Clause in a land use context. [*Maui Co, supra* at 1015.]

In light of *Cutter, Maui Co,* and other federal precedents, we conclude that the portion of the RLUIPA at issue here does not violate the Establishment Clause of the United States Constitution.

Defendants next argue that the trial court erred in granting plaintiff an award of attorney fees because

confined to an institution," unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." See 42 USC 2000cc-1(a)(1) and (2).

plaintiff failed to make a demand for attorney fees and costs in its complaint. Whether a party has waived its claim to attorney fees under a statute or court rule is a question of law that we review de novo. See *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 377; 652 NW2d 474 (2002).

Attorney fees may be awarded to the prevailing party in RLUIPA cases, in the court's discretion, under the authority of 42 USC 1988(b). Citing federal case law, defendants argue that plaintiff has waived its right to those fees because (1) plaintiff failed to list its claim for attorney fees and costs in its complaint and otherwise failed to file an amended complaint containing such a request and (2) plaintiff failed to incorporate its claim for attorney fees and costs into the various drafts of the final order.

However, MCR 2.601(A) states: "Except as provided in subrule (B), every final judgment may grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his or her pleadings." Therefore, the trial court properly exercised its discretion in awarding the fees. The issue of attorney fees was briefed by the parties, a hearing on the issue took place, and the trial court's written opinion awarding the fees shows that it thoroughly considered the matter. No error requiring reversal occurred.

Defendants contend that the court should not have awarded attorney fees to plaintiff because the late presentment of the issue prejudiced defendants. In their statement of questions presented for appeal, defendants suggest that the court's award of attorney fees, under the circumstances of the case, essentially denied defendants due process of law. However, defendants offer no supporting authority for this argument.

"A bald assertion without supporting authority precludes examination of [an] issue." *Impullitti v Impullitti*, 163 Mich App 507, 512; 415 NW2d 261 (1987). To the extent that defendants rely on *Van Pembrook v Zero Mfg Co*, 146 Mich App 87; 380 NW2d 60 (1985), to support their due process argument, we note that that case does not concern due process and attorney fees. Rather, *Van Pembrook* indicated that, because the plaintiff's complaint for breach of contract did not aver special damages, and because the damages did not flow naturally from the alleged breach, the complaint "did not reasonably inform defendant of these types of damages . . . ." *Id.* at 107. Here, the award of attorney fees to the prevailing party was a possibility from the commencement of this RLUIPA lawsuit under the authority of 42 USC 1988(b). Thus, defendants knew or should have known of the possibility of such an award. Reversal is unwarranted.

Both cases are affirmed.