SHEPHERD MONTESSORI CENTER MILAN v
ANN ARBOR CHARTER TOWNSHIP

Docket No. 272357. Submitted April 5, 2007, at Lansing. Decided May 22,
2007, at 9:00 a.m. Leave to appeal sought.

Shepherd Montessori Center Milan brought an action in the Wash-
tenaw Circuit Court against Ann Arbor Charter Township, a
township zoning official, and the township's zoning board of
appeals after it was denied a variance to operate a Catholic
Montessori school on leased property. The court, Melinda Morris,
J., granted the defendants' summary disposition motion and
denied the plaintiff's summary disposition motion. The Court of
Appeals, OWENS and SCHUETTE, JJ., (MURPHY, P.J., concurring in the
result only), affirmed in part and reversed in part. With regard to
the matters reversed, the Court of Appeals determined that the
plaintiff had satisfied one of the jurisdictional requirements to
bring an action under 42 USC 2000cc of the Religious Land Use
and Institutionalized Persons Act (RLUIPA) and that the plain-
tiff's use of the property for religious education was a religious
exercise protected under RLUIPA. The Court of Appeals remanded
the case for the trial court to determine whether the defendants'
denial of a variance placed a substantial burden on the plaintiff's
religious exercise. The Court of Appeals instructed the parties and
the trial court to consider various factors in analyzing the RLUIPA
claim, including the actual availability of alternative property, the
availability of property suitable for a primary school, and the
economic burdens of alternative locations. The Court of Appeals
also reversed with regard to the plaintiff's equal protection claim.
259 Mich App 315 (2003). On remand, the trial court again granted
the defendants' summary disposition motion and denied the
plaintiff's summary disposition motion and again concluded that
the plaintiffs had failed to establish a genuine issue of material fact
concerning its equal protection claim. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred by ruling that other properties were
actually available for the plaintiff to operate its school. The
plaintiff presented documentary evidence that no suitable prop-
erty was available, and the defendants presented no evidence in

response. When considering a summary disposition motion, a trial court may not weigh the evidence or assess credibility.

2. The trial court erred in its determination that the plaintiff could find other property suitable for use as a primary school. The trial court improperly added to this factor a requirement that the particular property at issue be essential to the plaintiff's religious exercise, which is not a requirement under RLUIPA. The trial court also erred in analyzing this factor by considering the availability to the plaintiff of the financial resources of the Ave Maria Foundation, with which the plaintiff is associated.

3. The trial court failed to apply the law of the case when it considered the economic burdens of alternative locations. Instead, the trial court improperly considered caselaw from other jurisdictions to determine that real estate costs or market conditions could not place a substantial burden on the plaintiff's religious exercise.

4. The trial court erred by failing to grant summary disposition for the plaintiff on its RLUIPA claim. Given the evidence presented, reasonable minds could not differ with regard to the conclusion that the plaintiff could not afford any of the properties listed in the detailed affidavit accompanying its motion and with regard to the conclusion that the denial of the variance substantially burdened the plaintiff's religious exercise. If a plaintiff establishes a substantial burden on its religious exercise, 42 USC 2000cc(a)(1) requires the defendant governmental entity to demonstrate that its land-use regulation furthers a compelling governmental interest. The defendants presented no evidence that a compelling governmental interest required them to deny the plaintiff's request for a variance.

5. The trial court erred by granting the defendants summary disposition on the plaintiff's equal protection claim. It was the law of the case that the plaintiff had presented a genuine issue of material fact regarding whether it was situated similarly to a secular entity to which the defendants had previously granted a variance for the use of the same property as a day-care center.

6. The trial court erred by failing to grant summary disposition to the plaintiff on its equal protection claim. The defendants treated a secular entity more favorably than the plaintiff, which is a religious entity. This shifted the burden to the defendants to show that their denial of the variance was precisely tailored to achieve a compelling governmental interest. The defendants, however, offered no evidence or argument on this point.

7. Because the defendants violated RLUIPA and the application of the zoning ordinance violated equal protection, the decision of the zoning board of appeals was contrary to the law, and the trial court erred when it affirmed it.

Reversed and remanded for entry of a judgment in the plaintiff's favor.

ZONING — VARIANCES — RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT.

A land-use regulation may not substantially burden the religious exercise of a person, including a religious entity, unless the governmental entity demonstrates that the regulation furthers a compelling governmental interest and that the regulation is the least restrictive means to achieve that interest (42 USC 2000cc[a][1][A]).

*Robert L. Bunting* and *Robert Charles Davis* for the plaintiff.

*Bodman LLP* (by *James J. Walsh, Sandra L. Sorini,* and *G. Christopher Bernard*) for the defendants.

Before: SAAD, P.J., and HOEKSTRA and SMOLENSKI, JJ.

SAAD, P.J. Plaintiff appeals the trial court's order that granted summary disposition to defendants after this Court remanded this case in *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp,* 259 Mich App 315; 675 NW2d 271 (2003) (*Shepherd I*). After remand, the trial court again ruled that plaintiff did not show a violation of 42 USC 2000cc of the Religious Land Use and Institutionalized Persons Act (RLUIPA) and that plaintiff did not show evidence of discrimination to support its equal protection claim. We reverse and remand for entry of judgment in favor of plaintiff.

I. FACTS AND PROCEDURAL HISTORY

This Court summarized the facts before remand in *Shepherd I, supra* at 321-323:

This case originated from a zoning dispute in Ann Arbor Charter Township. Plaintiff had a leasehold interest in the Domino's Farms Office Park and operated a Catholic Montessori day care program. In April 2000, plaintiff notified the township of its intention to lease additional property immediately adjacent to its day care facility and to operate a Catholic Montessori school for children grades K-3. Plaintiff anticipated that twenty-five students would be attending this school. Plaintiff hoped to utilize space that had been occupied by the "Rainbow Rascals," (a non-religious, pre-school day care program), which previously had received approval from the defendants to accommodate up to one hundred students.

The property at issue is zoned "OP" (office park district) pursuant to the township zoning ordinance. The township zoning ordinance expressly permitted the operation of day care centers within the OP district, but only for children of office park employees. Plaintiff requested in writing a zoning determination from the township regarding whether plaintiff's proposed use of the property would be allowed under the township's ordinance. In a letter dated May 1, 2000, the zoning official for the township informed plaintiff that the zoning ordinance classified its proposed use as "primary school." The letter informed plaintiff that primary schools were not listed as permitted uses in OP districts and denied plaintiff's proposed use of the property.

On May 30, 2000, plaintiff filed a petition with the Ann Arbor Charter Township Zoning Board of Appeals (ZBA) appealing the zoning official's decision. Plaintiff sought the following: (1) a reversal of the zoning official's determination so as to allow the proposed use; (2) a use variance; and (3) a determination that plaintiff's proposed use as a primary school be considered a "substituted use" of the Rainbow Rascals day care program. With respect to plaintiff's second request in the May 30 petition, plaintiff noted that defendants had granted a use variance to Rainbow Rascals on December 3, 1991, which permitted an expanded use of the premises to allow children of non-office park employees to attend the Rainbow Rascals day care program. As mentioned, the original zoning ordinance

allowed the operation of a day care facility in an area zoned OP only for use by children of office park employees. With respect to plaintiff's third request in its May 30 petition, plaintiff argued that its primary school should be considered a substitution of the day care program. Plaintiff noted that the proposed use of the property would be low impact and would involve less density than the currently approved use. Plaintiff emphasized that its proposed use would be for twenty-five students.

A hearing on plaintiff's petition was held on June 26, 2000. The ZBA rejected plaintiff's appeal. The ZBA held that plaintiff's proposed use of the property for a primary school could not be considered a substitution of a non-conforming use. The ZBA determined that because Rainbow Rascals had received a variance, its use of the premises became a conforming and permitted use in the OP district. Therefore, plaintiff's use would be non-conforming and a substitution was not permitted. The ZBA then determined that a primary school was not a permitted use in an area zoned OP. Finally, the ZBA denied plaintiff's request for a use variance because plaintiff failed to make the requisite showing that without the variance, there could be no viable economic use of the property.

On September 22, 2000, plaintiff filed the instant lawsuit. The complaint alleged: violations of RLUIPA . . . and equal protection . . . .[1] Plaintiff also filed a motion requesting a preliminary injunction.

On January 16, 2001, the trial court granted defendants' motion for summary disposition [and] denied plaintiff's motions for summary disposition . . . .

Under 42 USC 2000cc, defendants may not impose a substantial burden through land use regulation on a person or religious entity's religious exercise unless defendants have a substantial governmental interest and the regulation is the least restrictive means to

---

[1] Plaintiff raised other claims, but this Court affirmed the trial court's dismissal of those counts, *Shepherd I, supra* at 348, and none is pertinent to this appeal.

achieve that interest. In *Shepherd I, supra* at 327-329, this Court held that plaintiff had satisfied the jurisdictional requirement of RLUIPA found in 42 USC 2000cc(a)(2)(C) and that plaintiff's use of the property for religious education was a religious exercise within the meaning of RLUIPA. In *Shepherd I*, this Court remanded plaintiff's RLUIPA claim for a determination whether defendants' denial of plaintiff's variance placed a substantial burden on plaintiff's religious exercise, and instructed the parties to address

> [1] whether there are alternative locations in the area that would allow the school consistent with the zoning laws; [2] the actual availability of alternative property, either by sale or lease, in the area; [3] the availability of property that would be suitable for a K-3 school; [4] the proximity of the homes of parents who would send their children to the school; and [5] the economic burdens of alternative locations. [*Id.* at 332-333.]

On remand, the trial court found in favor of defendants on each factor, granted defendants' motion for summary disposition, and denied plaintiff's motion for summary disposition. With regard to plaintiff's equal protection claim, this Court had ruled that the trial court erred when it granted defendants' motion for summary disposition because genuine issues of material fact remained. *Id.* at 337. On remand, the trial court once again concluded that plaintiff had failed to demonstrate a genuine issue of material fact to establish a prima facie equal protection claim.

## II. ANALYSIS

### A. RLUIPA CLAIM

Plaintiff maintains that the trial court erroneously dismissed its RLUIPA claim after the trial court ruled

that other properties were actually available for plaintiff to operate a school for students from kindergarten through third grade.[2] Plaintiff asserts that, after the remand, it presented evidence that there were no other available properties in the area for it to operate the school within its budget and that defendants offered no documentary evidence to rebut plaintiff's evidence.

Plaintiff presented an affidavit from a vice president of the Ave Maria Foundation in which he stated that he had looked for property in the Ann Arbor Township area and that none was suitable and listed 24 properties in the surrounding area that were either too large, too expensive, or not available for sale or lease. The trial court opined, however, that this evidence was insufficient and that the vice president's search was not rigorous enough. When considering a motion for summary disposition, a court may not weigh the evidence or assess credibility. *In re Handelsman,* 266 Mich App 433, 437; 702 NW2d 641 (2005). The trial court essentially concluded that it did not believe the vice president's

---

[2] We review de novo a trial court's decision on a motion for summary disposition. *Shepherd I, supra* at 324. "The purpose of summary disposition is to avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law." *Id.* In reviewing a decision under MCR 2.116(C)(10), we consider all documentary evidence in the light most favorable to the nonmoving party to determine whether there is any genuine issue of material fact that would entitle the moving party to judgment as a matter of law. *Knauff v Oscoda Co Drain Comm'r,* 240 Mich App 485, 488; 618 NW2d 1 (2000); *Wilcoxon v Minnesota Mining & Mfg Co,* 235 Mich App 347, 357-358; 597 NW2d 250 (1999). " '[A] court may not weigh the evidence before it or make findings of fact; *if the evidence before it is conflicting,* summary disposition is improper.' " *Hines v Volkswagen of America, Inc,* 265 Mich App 432, 437; 695 NW2d 84 (2005), quoting *Lysogorski v Bridgeport Charter Twp,* 256 Mich App 297, 299; 662 NW2d 108 (2003) (emphasis in original). "[T]his Court will be liberal in finding a genuine issue of material fact that requires a trial to resolve." *In re Handelsman,* 266 Mich App 433, 437; 702 NW2d 641 (2005).

assertions that no other properties were available, but it gave no reasons for this finding other than that the search was not extensive enough. The court nonetheless made the affirmative finding that other properties were both available and suitable for plaintiff. The trial court had no basis, in law or fact, for this conclusion when plaintiff presented documentary evidence that no suitable property was available and defendants presented no evidence in response.

The trial court asserted that plaintiff's previous school in Milan would have been acceptable, and defendants argue, without citing any record evidence, that the Milan space is available for plaintiff's use.[3] However, plaintiff presented evidence, and the trial court expressly found, that the church that owned the Milan property did not renew plaintiff's lease of the space because the church wanted to use the space for offices and other ministries.[4] Though defendants point out that plaintiff had other motivations unrelated to reli-

---

[3] This Court need not consider allegations made by a party when the party fails to cite where the record would support those allegations. See MCR 7.212(C)(7) ("Facts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court."); see also *Derderian v Genesys Health Care Systems*, 263 Mich App 364, 388; 689 NW2d 145 (2004) (holding that this Court "will not search the record for factual support for plaintiffs' claims").

[4] Defendants argue that much of plaintiff's evidence should not be believed because the entities and witnesses were associated with the Ave Maria Foundation and Thomas Monaghan. For example, defendants refer to the Muirfield Corporation, which searched for property for plaintiff, as "a front for Monaghan and the Ave Maria Foundation." The trial court also stated that "the Ave Maria Foundation, whether through the Muirfield Corporation or directly, made its extensive resources available to buy property *ostensibly* for [plaintiff]" (emphasis added). However, the trial court could not properly disregard this evidence on the basis of these concerns because a court considering a motion for summary disposition may not weigh the evidence or assess credibility. *In re Handelsman, supra* at 437.

gious practice for moving to Ann Arbor, these allegations simply do not establish that the Milan site remains available. Thus, the suitability of the Milan space is irrelevant to whether other suitable properties were, in fact, *available*.

The trial court also ruled that the location at issue here is not itself essential to plaintiff's religious exercise because "[i]t is apparent from [the testimony of the Milan school's principal, Naomi Corera] that she simply had her heart set on staying in the Office Park because of her personal preferences and for the sake of convenience." While Ms. Corera may have preferred the property for personal reasons, defendants presented no evidence that plaintiff could have gone elsewhere after their Milan lease was not renewed. Moreover, whether this property in particular would be essential to plaintiff's religious exercise is not one of the factors listed in *Shepherd I*, and the trial court erred in reading this requirement into the third factor, "the availability of property that would be suitable for a K-3 school," *Shepherd I, supra* at 333, and in concluding that the third factor was not met because the property was not essential; this line of reasoning simply does not address the third factor.

The trial court may have read this requirement into RLUIPA pursuant to *Greater Bible Way Temple of Jackson v City of Jackson*, 268 Mich App 673, 681-682; 708 NW2d 756 (2005), in which this Court considered whether the defendants violated RLUIPA when the plaintiff sought to build low-income housing units at a greater population density than allowed by the applicable zoning. Though this Court reasoned that the plaintiff's religious exercise was substantially burdened because the property at issue was essential to the plaintiff's need to create housing near its church, *id.*,

this reasoning does not create any dispositive requirement under RLUIPA that the particular property must itself be necessary for the plaintiff's religious exercise. In other words, the essential nature of the property in *Greater Bible Way* was at most *evidence* of a substantial burden, not an element of it. Nothing in the text of RLUIPA requires a finding that the disputed property must be essential to religious exercise as opposed to other property, so the trial court erred in reading this requirement into the plain language of RLUIPA.[5] Further, plaintiff's situation is similar to *Greater Bible Way* in this regard because a chapel for Mass and other religious activities for Catholic school students are necessary to their religious exercise.[6]

The trial court also opined that plaintiff could in fact find other property suitable for use as a primary school because it had access to abundant financial resources through the Ave Maria Foundation and could even buy one of the properties that it listed as having an unsuitable building and then tear down the building and rebuild. It further reasoned that "it is appropriate to weigh the Ave Maria Foundation's contributions as part of [plaintiff's] financial resources" because "Ms. Corera testified . . . that [plaintiff] supported itself to the best of its ability but that the Ave Maria Foundation pro-

---

[5] In determining the meaning of a federal statute, courts ascertain the intent of Congress by looking to the language of the statute itself, and if the language is clear, the inquiry is complete. *Brilliance Audio, Inc v Haights Cross Communications, Inc*, 474 F3d 365, 371 (CA 6, 2007). Also, courts may not add anything to the plain meaning of a federal statute. *Telespectrum, Inc v Kentucky Pub Service Comm*, 227 F3d 414, 421 (CA 6, 2000).

[6] To support its finding that Ms. Corera favored the disputed property as a matter of mere personal preference and convenience, the trial court cited her testimony that the property was better suited as a Catholic school than the Milan space because plaintiff could hold Mass and other religious activities for students in the chapel.

vided whatever funds were necessary to operate the school[.]" The trial court cited no authority for its decision to deviate from what it called the normal rule that "the existence of well-funded corporate entities owned by the principal(s) of the plaintiff organization would not be relevant to whether the plaintiff has the financial resources to accomplish its goal."[7]

Moreover, though the trial court opined that "the Ave Maria Foundation . . . made its extensive resources available to buy property ostensibly for [plaintiff]," the foundation's president testified that it had sought to make plaintiff self-sufficient so that plaintiff would need no additional funds besides tuition and funds raised through its own fund raising. The Ave Maria Foundation's executive director testified that the foundation did not have any plans to provide plaintiff with lease support either in its current location or if plaintiff moved from the subject property. The trial court was required to consider the evidence in the light most favorable to plaintiff before granting summary disposi-

---

[7] The trial court's reasoning suggests that it may have intended to apply a variant of the doctrine of piercing the corporate veil. Piercing the corporate veil is an equitable principle that requires a finding that a subsidiary is a mere instrumentality of the parent, that the subsidiary was used to commit a wrong or fraud, and that there was "an unjust injury or loss to the plaintiff." *Rymal v Baergen*, 262 Mich App 274, 293-294; 686 NW2d 241 (2004). This doctrine is not applicable to this zoning dispute. And, were we to conclude that the doctrine could be invoked, it does not apply as a matter of law because it cannot be reasonably argued that defendants suffered an "unjust injury or loss" by any alleged fraud by plaintiff; defendants do not argue that they would suffer any harm by plaintiff educating up to 25 primary students on the property, and the zoning board granted a variance to the previous occupants, Rainbow Rascals, to enroll up to 100 children in its day-care program on the same parcel. The trial court further erred in relying on the doctrine of piercing the corporate veil because such a decision inherently required a finding of fraud or wrongdoing, and there was simply no showing of either.

.

tion for defendants, *Knauff v Oscoda Co Drain Comm'r,* 240 Mich App 485, 488; 618 NW2d 1 (2000), and given the testimony that plaintiff could not rely on lease support from the Ave Maria Foundation, the trial court erred in this regard. Further, Ms. Corera testified that failure to meet expenses through tuition and grants would require her to raise tuition, which could in turn render a Catholic education unaffordable for some parents, so the trial court erred in concluding as a matter of law that the cost of other property could essentially have no effect on plaintiff's religious exercise.[8]

With respect to the final factor, "the economic burdens of alternative locations," *Shepherd I, supra* at 333, the trial court stated:

> Courts have held with good reason that inconvenience and/or high cost of real property in a particular area should not suffice to establish a substantial burden.... [I]t will always be relatively easy for a plaintiff ... to articulate *some* ostensibly logical reason for rejecting any property but the property in dispute. [Emphasis in original.]

We hold that the trial court failed to apply the law of the case when it considered caselaw from other jurisdictions to determine that real estate costs or market conditions could not place a substantial burden on plaintiff's religious exercise. In *Shepherd I*, this Court specifically instructed the parties and the trial court to address whether the economic burden of alternative locations placed a substantial burden on plaintiff's

---

[8] The trial court also erred when it found that plaintiff offered or considered offering as much as $880,000 to the Knights of Columbus for one property. There is simply no evidence that plaintiff considered offering $880,000 because plaintiff showed by affidavit that it had inquired about the property, that the Knights of Columbus could not reach a consensus, and that even if it had, the cost of over $800,000 would have been beyond plaintiff's resources.

religious exercise. *Shepherd I, supra* at 333. "[A]n appellate court's determination of an issue in a case binds lower tribunals on remand . . . ." *Grievance Administrator v Lopatin,* 462 Mich 235, 260; 612 NW2d 120 (2000). Though defendants argue that the trial court did in fact address this factor, rather than applying the law of the case and considering the economic impact on plaintiff, the trial court noted that other jurisdictions have held that real estate costs attributable to zoning cannot create a substantial burden under RLUIPA. While the trial court also acknowledged that this Court has held differently from courts in other jurisdictions, it then distinguished this case from *Greater Bible Way* for reasons already discussed. Thus, although the trial court may have discussed this critical factor, the practical effect of the trial court's analysis is that it failed to follow this Court's ruling in *Shepherd I.* Moreover, even if this case is distinguishable from *Greater Bible Way*, the trial court improperly considered caselaw from other jurisdictions that rendered meaningless this Court's remand instruction to consider "the economic burdens of alternative locations." *Shepherd I, supra* at 333. The trial court could conceivably have looked to other cases for guidance to apply this factor, but it is disturbing that the trial court's approach rendered this Court's remand instruction meaningless.[9]

Also, plaintiff maintains that the trial court should have granted summary disposition to plaintiff on its RLUIPA claim. We agree. On the evidence presented, reasonable minds could not differ that plaintiff could not afford any of the listed properties. Ms. Corera

---

[9] We also are not bound by any of the decisions from other jurisdictions regarding RLUIPA that the trial court cited in its opinion or that defendants cite in their initial appellate brief or as supplemental authority. See *Shepherd I, supra* at 325 n 2.

testified that she would not start any program unless the tuition itself could fund it and that it was a struggle to meet the rent of about $40,000 a year. Defendants have not argued or established that plaintiff could have afforded any of the listed properties at $40,000 a year and, as discussed, have not shown any justification for looking to the Ave Maria Foundation's resources to establish this point.

Further, though defendants characterize the affidavit of the foundation's vice president as not credible, defendants failed to present any evidence to rebut his factual assertions about the availability, suitability, or affordability of other area properties. Once a moving party properly supports its motion with documentary evidence, "the nonmoving party must respond with documentary evidence setting forth specific facts showing that there is a genuine issue for trial." *Richardson v Michigan Humane Society*, 221 Mich App 526, 527; 561 NW2d 873 (1997). And, though the trial court concluded that the affidavit was too "vague and conclusory," and failed to explain why the properties were unsuitable or too expensive, and failed to provide asking prices, plaintiff also submitted to the trial court an extensive binder containing explanations why many of the properties were unsuitable or too expensive and providing plaintiff's purchase offers (along with asking prices) for the named properties and other information. Far from being vague and conclusory, the exhibit indicated that certain properties with buildings ranging from 14,000 to 20,000 square feet were too large and expensive for a primary school for 25 children and specifically addressed why the costs for many of the buildings exceeded plaintiff's resources. Moreover, the trial court also erroneously stated that plaintiff offered no explanation of its finances. Again, Ms. Corera testified at length regarding plaintiff's financial need to

cover its expenses with tuition and to keep tuition low by paying $40,000 annually in rent or risk losing students because of increased tuition. The trial court erred by disregarding this evidence and by failing to conclude, on the basis of the evidence presented, that reasonable minds could not differ that the denial of plaintiff's variance substantially burdened plaintiff's religious exercise.

Under 42 USC 2000cc, if a plaintiff establishes a substantial burden on its religious exercise, defendants have the burden of showing a compelling governmental interest. See 42 USC 2000cc(a)(1)(A) (stating that a land-use regulation may not substantially burden the religious exercise of a person, including a religious entity, "unless *the government demonstrates*" a compelling governmental interest) (emphasis added). Defendants presented no evidence that they had a compelling governmental interest requiring them to deny plaintiff's variance, and, therefore, the trial court should have granted summary disposition to plaintiff on its RLUIPA claim.

### B. EQUAL PROTECTION CLAIM

Plaintiff also contends that the trial court erred when it denied plaintiff's motion for summary disposition on its equal protection claim and granted summary disposition to defendants. We agree. The trial court reasoned that, though this Court had previously held that plaintiff provided sufficient evidence to survive summary disposition before discovery, plaintiff's evidence did not create a genuine issue of material fact after the case was remanded and the parties had the benefit of discovery. However, nothing in *Shepherd I* even arguably suggests that the lack of discovery factored into this Court's conclusion that plaintiff had

presented a genuine issue of material fact on its equal protection claim. In contrast to the RLUIPA count, which this Court expressly held could not be resolved without additional documentary evidence, this Court held with respect to the equal protection count that a genuine issue of material fact remained because plaintiff and Rainbow Rascals *could* be considered similarly situated, and it did not hold that the record was incomplete. *Id.* at 333, 337. This Court opined:

> At the very least, we are not persuaded that plaintiff's request for a variance required any more of a deviation from the zoning ordinance than the variance granted to Rainbow Rascals. Given that Rainbow Rascals was a secular day care center, whereas plaintiff's proposed use involved religious education, reasonable minds could differ with regard to whether plaintiff and Rainbow Rascals were similarly situated. Therefore, the trial court erred in granting defendants' motion for summary disposition on plaintiff's equal protection claim because genuine issues of material fact remain. [*Id.* at 337.]

Defendants have neither argued nor provided evidence that plaintiff's request for a variance would require any more of a deviation from the zoning ordinance than the variance granted to Rainbow Rascals. Thus, it was the law of the case that "reasonable minds could differ with regard to whether plaintiff and Rainbow Rascals were similarly situated," *id.*, and the trial court should not have granted summary disposition to defendants.[10]

The trial court also held that although Rainbow Rascals had received a variance, "the variance had

---

[10] Although the trial court emphasized that Ms. Corera testified after remand that she had not personally experienced discriminatory bias by defendants, requiring plaintiff to provide direct evidence in this regard is inherently inconsistent with this Court's prior opinion that a genuine issue of material fact may be established through circumstantial evidence. *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004).

nothing to do with the number of students or level of education. . . . [The variance allowed] children other than children of [office park] employees to use Rainbow Rascals day care—the exact same variance that [plaintiff] itself received . . . . " This reasoning also failed to apply the law of the case because this Court had already rejected the trial court's previous and essentially identical holding when this Court held that "plaintiff did argue that it was treated differently from the Rainbow Rascals day care center in that plaintiff wanted to use the property to educate only twenty-five children, whereas Rainbow Rascals was permitted to use the premises for up to one hundred children." *Shepherd I, supra* at 336.[11]

The trial court should have granted summary disposition to plaintiff. Though this Court observed that issues of fact remain about whether plaintiff and Rainbow Rascals were similarly situated, defendants concede on appeal that "[t]he similarity of the two entities is not in dispute." Evidence established that defendants denied plaintiff a variance to operate an educational program in the same space formerly occupied by the similarly situated Rainbow Rascals, notwithstanding that there would be far fewer children in the school and that it would cause fewer traffic and density problems. Indeed, as clarified at oral argument on appeal, after several years of litigation it is unrebutted that defendants have not offered a reason to plaintiff why it was denied the opportunity to operate its school in the identical space that Rainbow Rascals operated its day-

---

[11] We reject defendants' argument that the zoning board granted plaintiff the same variance that it granted to Rainbow Rascals when it allowed plaintiff to enroll children in its day-care center next door to the subject property. Again, the board allowed a secular entity to enroll up to 100 children in day care on the subject property and denied plaintiff's request to enroll up to 25 students on the same property.

care program. Thus, we hold that defendants have treated a secular entity more favorably than plaintiff, a religious entity.[12] The burden then shifted to defendants to show that their denial of plaintiff's variance was precisely tailored to achieve a compelling governmental interest, *Shepherd I, supra* at 334, and defendants offered no evidence or argument on this point. Accordingly, the trial court erred when it failed to grant summary disposition to plaintiff.

We reverse the trial court's grant of summary disposition to defendants on plaintiff's RLUIPA and equal protection claims, and we reverse the trial court's denial of summary disposition to plaintiff on its RLUIPA and equal protection claims. Because defendants violated RLUIPA and the application of the zoning ordinance violated the equal protection guarantee of the United States Constitution, the ZBA's decision was contrary to law and the trial court erred when it affirmed the ZBA's denial of plaintiff's request for a variance. We remand this case to the trial court to enter judgment in favor of plaintiff and to reverse the ZBA's denial of plaintiff's variance request. We retain jurisdiction.

---

[12] The trial court also reasoned that defendants had no obligation to show that plaintiff's use of the space would cause any density or traffic problems until plaintiff met its burden of showing that there was no other reasonable conforming use under the zoning use. Though such a showing might be relevant under a taking analysis, we are not aware of any theory under which these considerations would apply to an equal protection claim. This spurious analysis, along with the others outlined above and coupled with the trial court's failure to comply with this Court's instructions in *Shepherd I*, strongly suggests that the trial court simply sought to reaffirm its earlier holding.